KAB

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Jerome Harper,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Defendants. | No. CV 18-00298-PHX-DGC (DMF)<br><br>**ORDER** |

Plaintiff Gary Jerome Harper, who is currently confined in the Arizona State Prison Complex-Eyman, filed this action pursuant to 42 U.S.C. § 1983. Before the Court is Plaintiff's "Motion for Emergency Injunction Against the Defendants Charles L. Ryan and Corizon Health Services John Does" (Doc. 3). The Court will deny the motion.

**I.     Motion for Emergency Injunction**

In his Motion seeking injunctive relief, Plaintiff asks the Court to order "Defendant Corizon Health Services providers to take him to the Urologist Dr. Shah for medical treatment concerning his suprapubic catheter[1] that was put inside of Plaintiff's body." (Doc. 3 at 1.) Plaintiff alleges that he has not been given supplies to clean the area around the open wound, and has not been given medication to keep the area from becoming infected. (*Id.*) Plaintiff asserts that he has requested that the catheter be

---

[1] "A suprapubic catheter is a sterile (germ-free) tube that drains urine out of the bladder. It is inserted through a stoma (created opening) in the abdomen and into the bladder." (Doc. 20 at 1 n.1.)

removed because of "cloudy foul smelling and yellow drainage from the area." (*Id.* at 2.) Plaintiff claims that Corizon's providers refuse to treat him because he has terminal cancer and they believe it would be a waste of resources. (*Id.* at 3.)

In response, Defendant Corizon Health presents the following evidence. On November 27, 2017, Plaintiff was sent to Maricopa Integrated Health Systems for placement of a suprapubic catheter, and his providers ordered all medications prescribed by the surgeon, including Tylenol-3, Colace, Senokot, and Ibuprofen. (Doc. 20 at 29-36.) Thereafter, Plaintiff was brought to the medical hub daily for the next 30 days for wound care. (*Id.* at 38-43.) Plaintiff was instructed to shower daily, clean the wound with soap and water, and then come to medical for dressing changes. (*Id.* at 45.)

On December 4, 2017, Plaintiff began exhibiting signs of infection at the catheter site and was treated with two courses of antibiotics when the infection did not immediately clear up. (*Id.* at 53-58.) In mid-late December 2017, the nurses recorded that Plaintiff did not appear to be following instructions for daily showers and wound care. (*Id.* at 60-62.)

On January 3, 2018, Nurse Practitioner Gay changed Plaintiff's catheter, prescribed additional antibiotics for a urinary tract infection, and told Plaintiff he would be seeing a urologist regarding his request for catheter removal. (*Id.* at 64-70.) On January 26, 2018, Plaintiff saw Dr. Shaw at Maricopa Integrated, and Dr. Shaw changed Plaintiff's catheter, noting no signs of leakage or infection. (*Id.* at 73-76.) Dr. Shaw recommended monthly catheter changes at the facility. (*Id.* at 74.) Upon his return to prison, a nurse practitioner ordered Plaintiff weekly dressing change supplies, including antibacterial soap, split gauze dressing, and roll tape, and prescribed Tylenol-3 for pain. (*Id.* at 78-82.) On February 1, 2018, Plaintiff complained of discharge from his catheter site, but the nurse practitioner examining him found no signs of infection and educated Plaintiff regarding how to change the dressing on the catheter. (*Id.* at 84-90.) Plaintiff's catheter was changed on-site on February 27, 2018 and April 17, 2018. (*Id.* at 92-95.) In February 2018, Plaintiff was prescribed long-term Nitrofurantoin to treat and prevent his

chronic urinary tract infections. (*Id.* at 81-82.) On April 24, 2018, Plaintiff was seen for a possible urinary tract infection. Antibiotics were prescribed, and Plaintiff's orders for catheter supplies were renewed. (*Id.* at 97-100.) Plaintiff was subsequently prescribed two additional antibiotics to clear the infection. (*Id.* at 102-105.) On June 5, 2018, Plaintiff arrived at medical complaining that his catheter had fallen out. Nurse Vinson replaced the catheter and noted no discharge or other signs of infection. (*Id.* at 107-116.) The nurse also noted that after he told Plaintiff he would be on medical watch for 24 hours, Plaintiff "became upset and threatened to pull out s/p catheter and threw medical supplies given to him on the floor." (*Id.* at 108.)

In Reply, Plaintiff asserts that his medical records show that Corizon has been days overdue with every catheter change since it was placed on November 27, 2017. (Doc. 23 at 11.) Plaintiff argues that although "Cipro" is prescribed for his urinary tract infections, it is not effective. (*Id.*) He further asserts that although he has been prescribed Tylenol 3 for his pain, it is not sufficient and should not be used for a long period of time. (*Id.* at 12.) Plaintiff asserts that his order for lower tier/lower bunk has not been followed. (*Id.* at 12-13.) He asserts that he tested positive for MRSA on April 30, 2018. (*Id.*) And he asserts that he is "not receiving appropriate urology and oncology care, and is being exposed to a continuous risk of significant injury along with unnecessary and wanton infliction of pain." (*Id.* at 13.)[2]

## II.  **Legal Standard**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*,

---

[2] Plaintiff later filed a "Motion to Amend" his reply seeking to add allegations regarding alleged incidents of retaliation that occurred after Plaintiff's motion seeking injunctive relief was fully briefed. To the extent Plaintiff seeks relief for events that occurred after the filing of his original motion, he must file a new motion in order to give Defendants an opportunity to respond. Accordingly, Plaintiff's Motion to Amend (Doc. 26) will be denied.

1  520 U.S. 968, 972 (1997) (per curiam); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right"). A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)). Under this serious questions variant of the *Winter* test, "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072.

Regardless of which standard applies, the movant "has the burden of proof on each element of the test." *See Envtl. Council of Sacramento v. Slater,* 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). Further, there is a heightened burden where a plaintiff seeks a mandatory preliminary injunction, which should not be granted "unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1441 (9th Cir. 1986) (citation omitted).

The Prison Litigation Reform Act imposes additional requirements on prisoner litigants who seek preliminary injunctive relief against prison officials and requires that any injunctive relief be narrowly drawn and the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

**III.  Discussion**

In his Motion, Plaintiff alleged that he was being denied supplies for his catheter, that the catheter area was infected, and that he was denied medication for his pain. The

medical records submitted with Defendant's response contradict these allegations and show that Plaintiff has been provided continuous care with regard to his catheter. In reply, Plaintiff seeks to add additional allegations regarding alleged delays for replacements of his catheters, his Special Needs Order, and his disagreement with the pain medication he has been offered. These new allegations do not establish that Plaintiff will suffer irreparable harm in the absence of a Court order directing that Corizon take Plaintiff "to the Urologist Dr. Shah for medical treatment concerning his suprapubic catheter," and it is unclear from this record what treatment Dr. Shah could provide that Plaintiff is not already receiving. Plaintiff has neither shown irreparable harm in the absence of an injunction or how the injunction he seeks is the least intrusive means to correct any harm of which he complains.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's "Motion for Emergency Injunction Against the Defendants Charles L. Ryan and Corizon Health Services John Does" (Doc. 3) and Plaintiff's "Motion to Amend Document 23" (Doc. 26).

(2) Plaintiff's "Motion to Amend Document 23" (Doc. 26) is **denied**.

(3) Plaintiff's "Motion for Emergency Injunction Against the Defendants Charles L. Ryan and Corizon Health Services John Does" (Doc. 3) is **denied**.

Dated this 10th day of September, 2018.

David G. Campbell
Senior United States District Judge